**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RENEE M. SEALS,

                                        Plaintiff,                    5:21-cv-988 (BKS/TWD)

v.

BARBARA MARIANETTI-DESROSIERS, Chief HR
Officer, RODNEY CORRY, VP, Program Management,
and COORDINATED CARE SERVICE, INC.,

                                        Defendants.

**Appearances:**

*Plaintiff, pro se:*
Renee M. Seals
Syracuse, NY 13205

*For Defendants:*
John C. Nutter
Woods Oviatt Gilman LLP
1900 Bausch & Lomb Place
Rochester, NY 14604

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

          Pro se plaintiff Renee Seals brings this employment discrimination action against

Defendants Coordinated Care Services, Inc. ("CCSI"), Barbara Marianetti-DesRosiers, and

Rodney Corry. (*See generally* Dkt. No. 16 (amended complaint)). Plaintiff's Amended

Complaint[1] alleges nine claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), as

---

[1] Plaintiff amended her complaint once as a matter of course in response to Defendants' motion to dismiss the original complaint. (*See* Dkt. Nos. 12, 16). Defendants withdrew that motion to dismiss. (Dkt. No. 19).

amended, 42 U.S.C. § 2000e et seq.; New York State Human Rights Law ("NYSHRL"), N.Y.

Executive Law § 290 et seq.; and 42 U.S.C. §§ 1981, 1983. (*Id.*). Defendants move to dismiss

the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state

a claim. (Dkt. No. 22). Plaintiff opposes Defendants' motion and cross-moves for leave to file a

second amended complaint. (Dkt. No. 25). Defendant opposes Plaintiff's cross-motion to amend.

(Dkt. No. 30). For the following reasons, Defendants' motion is granted and Plaintiff's motion is

denied.

## II.    FACTS[2]

Plaintiff began her employment with CCSI on June 14, 2016 as "Director of Contracts."

(Dkt. No. 25-1, at 3). She had a salary of approximately $86,000. (*Id.* at 4). The Proposed

Second Amended Complaint does not describe her race; in her opposition to the motion to

dismiss Plaintiff states that she was the "first black woman to hold this title." (Dkt. No. 25, at

2).[3] Between February 2018 and September 2019, Plaintiff informed "CCSI Supervisor" Rodney

Corry that she was experiencing a hostile work environment. (Dkt. No. 25-1, at 3). Although

aware of the hostile work environment, Mr. Corry "failed to take prompt remedial actions." (*Id.*).

On October 30, 2019, Plaintiff filed "an unlawful discrimination/harassment complaint."

(*Id.*). On January 10, 2020, she filed a "bullying complaint." (*Id.* at 3). On January 16, CCSI

Chief Human Resources Officer Barbara Marianetti-DesRosiers and Mr. Corry placed Plaintiff

on an "involuntary administrative leave." (*Id.*).

---

[2] The facts are drawn from the Proposed Second Amended Complaint and the attached exhibits. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[3] The Court has considered Plaintiff's opposition to Defendants' motion to dismiss, to the extent that submission is "consistent with the allegations in the complaint." *Crum v. Dodrill*, 562 F. Supp. 2d 366, 373–74 & n.13 (N.D.N.Y. 2008) (noting that "the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum," to the extent those materials "are consistent with the allegations in the complaint" (citations omitted)).

In April 2020, CCSI received a letter from Onondaga County containing Plaintiff's "proposed revised salary," which was approximately $14,000 less than Plaintiff's current salary. (*Id.* at 3–4). Ms. Marianetti-DesRosiers and Mr. Corry "advised Onondaga County to terminate [Plaintiff's] contract," which was the only contract canceled in her department. (*Id.* at 4). In May and June 2020, CCSI did not include Plaintiff's proposed salary in the "2021 annual budget for approval by the County Legislature." (*Id.*).

On July 30, 2020, Ms. Marianetti-DesRosiers and Mr. Corry told Plaintiff her contract was terminated. (*Id.*). When Plaintiff asked why she had not been informed sooner that her contract was canceled, Ms. Marianetti-DesRosiers and Mr. Corry "did not provide a rational answer." (*Id.*). On July 31, Defendants offered Plaintiff a job "with decreased responsibilities, demotion, reduced salary at $48,000.00, relocation to another building with a small, shared office space without windows, and one-year non-renewal contract." (*Id.* at 5). In August, Defendants offered Plaintiff a second position with a salary of $72,000 and the same undesirable features as the first job offered. (*Id.*). Plaintiff started a new position in September 2020 "with no other employment options from CCSI." (*Id.*).

On January 21, 2021, Plaintiff filed a complaint with the New York State Division of Human Rights and the Equal Employment Opportunity Commission alleging retaliation. (Dkt. No. 25-1, at 12–13). Plaintiff stated that she made a complaint of employment discrimination in January 2020, and that she discovered on July 31 that her salary would decrease. (*Id.*). Plaintiff "believe[d] that [she] ha[d] been reassigned and ha[d] suffered decreased wages in retaliation for participating in protected activity." (*Id.*). On June 8, 2021, Plaintiff received a right-to-sue letter from the EEOC. (*Id.* at 14). Plaintiff generally alleges that she "believe[s]" the reason for Defendants' conduct was that she "filed two discrimination complaints." (*Id.* at 4–5).

### III.    STANDARD OF REVIEW

#### A.    Motion to Dismiss—Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that has been filed pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

#### B.    Motion to Amend—Fed. R. Civ. P. 15

In general, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Where plaintiffs seek to amend their complaint while a motion to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.'" *Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012) (quoting *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008)). Since Defendants have had a full opportunity to respond to the proposed amendments

and the primary claims remain the same, the Court considers the merits of the motion to dismiss

in light of the Proposed Second Amended Complaint. If the claims in the Proposed Second

Amended Complaint cannot survive the motion to dismiss, then Plaintiff's cross-motion to

amend will be denied as futile. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,

282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim

could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."), *abrogation on other*

*grounds recognized by Sagaponack Realty, LLC v. Vill. of Sagaponack*, 778 F. App'x 63 (2d Cir.

2019) (summary order).

## IV.    DISCUSSION

        Plaintiff's Proposed Second Amended Complaint asserts the following nine claims: (1)

retaliation in violation of Title VII against CCSI; (2) retaliation in violation of the NYSHRL

against CCSI; (3) retaliation in violation of the NYSHRL against Ms. Marianetti-DesRosiers and

Mr. Corry; (4) race discrimination in violation of the Fourteenth Amendment under Section 1983

against all Defendants; (5) retaliation in violation of the Fourteenth Amendment under Section

1983 against all Defendants; (6) retaliation in violation of the First Amendment under Section

1983 against all Defendants; (7) retaliation in violation of Section 1981 against all Defendants;

(8) race discrimination in violation of Section 1981 against all Defendants; and (9) violation of

the right to make and enforce contracts under Section 1981 against all Defendants. (Dkt. No. 25-

1, at 3, 7–10). Defendants move to dismiss all of Plaintiff's claims.

### A.    Title VII Retaliation Claim

        Defendants argue that Plaintiff's Title VII retaliation claim against CCSI must be

dismissed because Plaintiff does not plead sufficient factual details regarding any protected

activity and because she does not plausibly allege a causal connection between any protected

activity and any alleged adverse employment action. (Dkt. No. 22-1, at 12–14; Dkt. No. 30, at

10–12). Plaintiff generally responds that she "believe[s]" that the termination of her contract and her reassignment to a lower-paying, less desirable position were "due to [her] discrimination complaint." (Dkt. No. 25, at 4–5; *see* Dkt. No. 25-1, at 3–5 (further alleging that her placement on involuntary administrative leave on January 16, 2020 was impermissible retaliation)).

For a Title VII retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action— against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). Generally, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). To plead causation, the plaintiff must plausibly allege that the retaliation was the "but-for" cause of the employer's adverse action, i.e., that "the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 90–91 (quoting *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)). Causation can be demonstrated either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (quoting *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

### 1.     Protected Activity

Under Title VII, it is unlawful for an employer to retaliate against an individual because she "opposed any practice" made unlawful by Title VII, such as race or gender discrimination. *Vega*, 801 F.3d at 89–90; *see also Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) ("[A]mbiguous complaints that do not make the

employer aware of alleged discriminatory misconduct do not constitute protected activity."). Plaintiff alleges that she informed Mr. Corry of a "hostile work environment" between February 2018 and September 2019, and filed an "unlawful discrimination/harassment complaint" on October 30, 2019. (Dkt. No. 25-1, at 3). Plaintiff also alleges that she filed a "bullying complaint" on January 10, 2020. (*Id.*). However, Plaintiff provides no facts about the contents of any of her complaints, whether informal or formal. There are therefore no facts from which the Court could plausibly infer that the "bullying complaint" or her complaints of harassment and a "hostile work environment" were in opposition to an "unlawful employment practice" under Title VII. To be protected under Title VII, a complaint must be "motivated by a 'good faith, reasonable belief that the underlying employment practice was unlawful [under Title VII].'" *Johnson v. City Univ. of N.Y.*, 48 F. Supp. 3d 572, 576 (S.D.N.Y. 2014) (quoting *Kwan*, 737 F.3d at 843); *see id.* at 577 (noting that a plaintiff's belief in this regard must be objectively reasonable). To be unlawful under Title VII, the conduct complained of must have some "nexus" with an individual's "membership in a protected class." *See id.* at 577; *see also* 42 U.S.C. § 2000e-2(a) (making unlawful certain employment practices which are done "because of [an] individual's race, color, religion, sex, or national origin"). The allegations of an "unlawful discrimination/harassment complaint" and a "hostile work environment" are conclusory, legal conclusions.

Because Plaintiff only alleges conclusory assertions of having informed her supervisor of a "hostile work environment" and filed complaints of "unlawful discrimination/harassment" and "bullying," without reference to any nexus to membership in a protected class, she has not plausibly alleged that her complaints were protected under Title VII. *Cf. Johnson*, 48 F. Supp. 3d at 577 (dismissing Title VII retaliation claim where the plaintiff complained about "bullying and

harassment" without any nexus to membership in a protected class); *see also Lynch v. Nat'l Fuel Gas Distribution Corp.*, 25 F. Supp. 3d 358, 367 (W.D.N.Y. 2014) (granting summary judgment on Title VII retaliation claim where the plaintiff complained that she was being "bullied" because of unreasonable performance expectations, and noting that nothing in the plaintiff's complaints could have placed the employer on notice that she was complaining about unlawful discrimination). The allegations of having complained of "unlawful discrimination" and a "hostile work environment" are too conclusory to plausibly allege that Plaintiff engaged in protected activity by opposing an unlawful employment practice. *See Degidio v. Centro Props., LLC*, No. 11-cv-1353, 2013 WL 440131, at *6 & n.7, 2013 U.S. Dist. LEXIS 15083, at *23 & n.7 (E.D. Pa. Feb. 4, 2013) (finding that the plaintiff's allegation that he engaged in protected activity by "report[ing] the hostile work environment" to be a "conclusory assertion" and "legal conclusion"); *Kwaning v. Cmty. Educ. Ctrs., Inc.*, No. 15-cv-928, 2015 WL 1600068, at *5, 2015 U.S. Dist. LEXIS 45674, at *11–12 (E.D. Pa. Apr. 8, 2015) (dismissing retaliation claim where plaintiff alleged that he filed charges of "illegal discrimination"). Thus, Plaintiff has failed to plausibly allege that she engaged in protected activity.

### 2.    Adverse Actions

The Court next considers what adverse employment actions Plaintiff has plausibly alleged. Defendants do not argue that Plaintiff's reassignment to another position and reduction in salary are not adverse employment actions for purposes of her retaliation claim, and the Court will therefore consider them as such. In their reply, however, Defendants argue that Plaintiff's allegation that she was placed on an "involuntary administrative leave" on January 16, 2020, without more, is insufficient to plausibly allege an adverse employment action. (Dkt. No. 30, at

11–12).[4] The Court agrees. Although Plaintiff alleges that Ms. Marianetti-DesRosiers and Mr. Corry placed her on an involuntary administrative leave, she provides no additional details about the leave, including the reason for the leave, how long the leave lasted, and whether it was paid or unpaid. Without additional information, Plaintiff has not plausibly alleged that that her placement on an involuntary administrative leave constituted an adverse employment action. *See, e.g.*, *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) (holding that "administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action"); *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (noting that the rule in *Joseph* is "not an absolute one" and that "suspension with pay may, in some circumstances, rise to the level of an adverse employment action" if the employer has "exceeded" its ordinary, reasonable procedures); *Foster-Bey v. Potter*, 296 F. Supp. 2d 195, 204–05 (D. Conn. 2003) (noting that whether administrative leave constitutes an adverse employment action "presents a heavily contextual question").

Accordingly, the Court will consider Plaintiff's reassignment and reduction in salary as adverse employment actions in assessing her retaliation claim.[5]

### 3.    Causal Connection

Defendants argue that Plaintiff's Title VII retaliation claim must be dismissed because she does not plausibly allege a "non-temporal basis" from which to infer a retaliatory motive and

---

[4] Defendants argue that Plaintiff "omit[s] the fact that [Plaintiff] was on leave with pay," and that placement on paid leave does not, without more, constitute an adverse employment action. (Dkt. No. 30, at 11–12 (citing *Perez-Dickson v. Bridgeport Bd. of Educ.*, 860 F. App'x 753, 756 (2d Cir. 2017) (summary order))). The Court does not consider Defendants' assertion that Plaintiff's leave was paid, as this fact is not alleged in the Proposed Second Amended Complaint.

[5] In light of this determination and the allegations in the Proposed Second Amended Complaint, the Court need not address Defendants' argument that Plaintiff failed to exhaust her administrative remedies with respect to adverse employment actions other than her reassignment with decreased wages. (*See* Dkt. No. 22-1, at 10–12; Dkt. No. 30, at 9–10; Dkt. No. 25-1 (omitting allegations regarding events occurring after Plaintiff started her new position in September 2020)).

because the alleged adverse employment actions are too temporally remote from her protected activity to otherwise support an inference of retaliatory motive. (Dkt. No. 22-1, at 13–14; Dkt. No. 30, at 10–12).

Even assuming that Plaintiff's complaints through October 2019 constituted protected activity, *see supra* Section IV.A.1, Plaintiff has not plausibly alleged a causal connection between those complaints and her reassignment and salary reduction. As an initial matter, Plaintiff has not alleged any facts which would directly suggest retaliatory animus. *Hicks*, 593 F.3d at 170. Plaintiff has also failed to plausibly allege that her complaint in October 2019 was a but-for cause of her reassignment to a lower paying position indirectly by temporal proximity or other circumstantial evidence. The passage of approximately nine months between October 2019 and Defendants' informing her that her position had been terminated and reassignment in July 2020, absent any additional facts, is too long to plausibly allege a causal connection between the two. *See, e.g.*, *Clayton v. City of Middletown*, 564 F. Supp. 2d 105, 112 (D. Conn. 2008) ("[C]ases that accept mere temporal proximity between an employer's knowledge of a protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" (citation omitted)). Moreover, while the Court has read Plaintiff's pleading to raise the strongest claims it suggests, Plaintiff's allegation that hers was the "only contract cancel[ed] in [her] department," (Dkt. No. 25-1, at 4), is too vague to support an inference of retaliatory motivation. Finally, Plaintiff's allegations throughout the Proposed Second Amended Complaint that she subjectively "believe[s]" her contract was terminated "because [she] participated in a protected activity when [she] filed two discrimination complaints" are not allegations of fact sufficient to plausibly allege a causal connection between any protected activity and her reassignment.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's Title VII retaliation claim.

### B.      NYSHRL Claims

Plaintiff asserts retaliation claims under the NYSHRL against CCSI (second cause of action) and Ms. Marianetti-DesRosiers and Mr. Corry (third cause of action). (Dkt. No. 25-1, at 10). Defendants argue that Plaintiff's NYSHRL claims must be dismissed for the same reasons they argued her Title VII retaliation claim should be dismissed, and because Plaintiff has not plausibly alleged that Ms. Marianetti-DesRosiers or Mr. Corry "individually violated" the law. (Dkt. No. 22-1, at 14–15; Dkt. No. 30, at 12–13).[6]

"Retaliation claims under [the] NYSHRL . . . are subject to the same analysis as retaliation claims under Title VII." *Bliss v. MXK Rest. Corp.*, 220 F. Supp. 3d 419, 425 (S.D.N.Y. 2016) (internal quotation marks and citation omitted). Therefore, for the same reasons that Plaintiff's Title VII retaliation claim must be dismissed, so must her NYSHRL retaliation claims. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's NYSHRL retaliation claims.

### C.      Section 1983 Claims

Defendants argue that Plaintiff's Section 1983 claims for racial discrimination and retaliation in violation of the Fourteenth Amendment and retaliation in violation of the First Amendment must be dismissed because Plaintiff has not alleged any state action, a necessary prerequisite for Section 1983 claims. (Dkt. No. 22-1, at 16–17; Dkt. No. 30, at 14–15).

---

[6] Mindful of Plaintiff's pro se status, the Court does not credit Defendants' argument that any claims against Ms. Marianetti-DesRosiers and Mr. Corry should be dismissed because the Proposed Second Amended Complaint does not "specifically identif[y]" the individual defendants in the caption section of the form complaint and therefore "does not formally state a claim" against them. (Dkt. No. 30, at 13). The Proposed Second Amended Complaint does mention "Chief HR Officer" and "VP/Program Mang/Supervisor" in the "Parties" section and expressly asserts claims against Ms. Marianetti-DesRosiers and Mr. Corry when listing the causes of action. (Dkt. No. 25-1).

Defendants argue that they are a private entity and two private individuals, and that none of the relevant conduct could be "fairly attributed" to the state. (*Id.*).

It is well-settled that a plaintiff alleging a violation of her constitutional rights under Section 1983 must show state action. *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012); *see* 42 U.S.C. § 1983 (imposing liability on persons who act "under color of any [state] statute, ordinance, regulation, custom, or usage"). While private parties generally are not state actors, their conduct can be attributed to the state for Section 1983 purposes if "(1) the State compelled the conduct [the "compulsion test"], (2) there is a sufficiently close nexus between the State and the private conduct [the "joint action test" or "close nexus test"], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the state [the "public function test"]." *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) (summary order) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). The "fundamental question" for each test is whether the private party's conduct is "fairly attributable" to the state such that it bears responsibility. *Fabrikant*, 691 F.3d at 207.

There is nothing in Plaintiff's allegations, read liberally, to suggest that CCSI is anything other than a private entity. (*See generally* Dkt. No. 25-1).[7] Ms. Marianetti-DesRosiers and Mr. Corry likewise appear to be private individuals employed by CCSI. However, Plaintiff does allege that CCSI "received [a] letter from Onondaga County" regarding her "proposed revised salary," that CCSI's annual budget was approved by the "County Legislature," and that

---

[7] CCSI's website states that it is a nonprofit organization which, among other things, "provides management services and technical assistance to other County governments across New York State and beyond, several state agencies, and a range of other not-for-profit organizations." Coordinated Care Services, Inc., "About Us," (last visited Aug. 5, 2022), https://www.ccsi.org/about-us/; *see Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471, 482–83 (N.D.N.Y. Nov. 25, 2019) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." (citation and internal quotation marks omitted)).

Defendants "entered into a contractual agreement with Onondaga County." (Dkt. No. 25-1, at 3–5, 7). While the nature of CCSI's relationship with Onondaga County is not entirely clear from Plaintiff's allegations, the Court nonetheless concludes that Plaintiff has not plausibly alleged that any of the Defendants engaged in state action. A private entity does not become a state actor "merely on the basis of 'the private entity's creation, funding, licensing, or regulation by the government.'" *Fabrikant*, 691 F.3d at 207 (citations omitted). Similarly, a private contractor's contract with the government is not itself sufficient to convert the private entity's conduct into state action. *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 492 (2d Cir. 2009) (noting that the "fact that 'a private entity performs a function which serves the public does not make its acts state action'" (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982))). Because CCSI's contract with or funding by Onondaga County is, standing alone, insufficient to make CCSI or its employees state actors, and there is nothing else in Plaintiff's allegations to suggest that the discriminatory and/or retaliatory conduct of which she complains is "fairly attributable" to the state, she has failed to plausibly allege state action. Her Section 1983 claims must therefore be dismissed, and the Court grants this portion of Defendants' motion.[8]

### D.    Section 1981 Claims

#### 1.    Retaliation

Defendants argue that Plaintiff's Section 1981 claim should be dismissed for the same reasons they argued her Title VII and NYSHRL claims should be dismissed. Indeed, "[r]etaliation claims under Title VII and § 1981 are both analyzed pursuant to Title VII principles." *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (citation and footnote omitted); *Privler v. CSX Transp. Inc.*, No. 18-cv-1020, 2021 WL 3603334, at *18, 2021

---

[8] The Court therefore does not address Defendants' argument that Plaintiff has otherwise failed to plausibly state a claim under Section 1983. (Dkt. No. 22-1, at 17–21; Dkt. No. 30, at 15–17).

U.S. Dist. LEXIS 152527, at *60 (N.D.N.Y. Aug. 13, 2021) (same). Thus, for the same reasons

Plaintiff's Title VII and NYSHRL retaliation claims must be dismissed, so must her Section

1981 retaliation claim.

### 2.      Race Discrimination & Making and Enforcing Contracts

Defendants argue that Plaintiff's Section 1981 claims for race discrimination and

violation of her rights to make and enforce contracts should be dismissed for failure to plausibly

allege discriminatory intent, differential treatment based on race, or rights under a contract. (Dkt.

No. 22-1, at 23–24; Dkt. No. 30, at 18–19).

42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States

shall have the same right in every State and Territory to make and enforce contracts, to sue, be

parties, give evidence, and to the full and equal benefit of all laws and proceedings for the

security of persons and property as is enjoyed by white citizens, and shall be subject to like

punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

Section 1981 defines the term "make and enforce contracts" to include "the making,

performance, modification, and termination of contracts, and the enjoyment of all benefits,

privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). It

therefore "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms,

and conditions of a contractual relationship, such as employment." *Patterson v. County of

Oneida*, 375 F.3d 206, 224 (2d Cir. 2004) (citation omitted).

To state a claim under Section 1981, "a plaintiff must allege facts in support of the

following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to

discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or

more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be

sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087

(2d Cir. 1993). The complaint must contain more than conclusory assertions. To "survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Avent v. Progressive Casualty Ins. Co.*, No. 19-cv-10907, 2021 WL 168500, at *3, 2021 U.S. Dist. LEXIS 9737, at *9 (S.D.N.Y. Jan. 19, 2021) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)). A plaintiff must "initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

While Section 1981 prohibits discrimination with respect to an employment contractual relationship, and thus is potentially applicable here, it is unclear exactly on what facts Plaintiff bases her Section 1981 claims, or how Plaintiff's Section 1981 claim "for discrimination based on race" differs from her Section 1981 claim "to make and enforce contracts." (Dkt. No. 25-1, at 8–9 (alleging that Defendants discriminated against her "in matters relating to her employment because of her race and a hostile work environment" (eighth cause of action) and that they violated her "rights to make and enforce contracts as [are] enjoyed by white citizens" (ninth cause of action))). The Court therefore considers the two causes of action together. Even assuming that Plaintiff, who is a member of a racial minority, has plausibly alleged an adverse employment action relating to an existing contractual employment relationship, she has not plausibly alleged that any of the Defendants intended to discriminate against her on the basis of race or that, "but for race," she would "not have suffered the loss of a legally protected right." *Comcast Corp.*, 140 S. Ct. at 1019. Plaintiff's allegations that she informed her supervisor about a "hostile work environment" and filed "discrimination complaints" are not sufficient factual allegations in this regard. The Proposed Second Amended Complaint simply contains no facts

from which the Court could infer that Plaintiff was in fact subject to racial discrimination, that any of the Defendants named in this action had the *intent* to discriminate against her based on race, or that race was a but-for cause of any adverse action. Plaintiff's conclusory allegations, without more, cannot substantiate a Section 1981 claim, even at the pleading stage. *See Mazurek v. Wolcott Bd. of Educ.*, 815 F. Supp. 71, 77 (D. Conn. 1993).

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's Section 1981 claims.

## V.    LEAVE TO AMEND

The Court denies Plaintiff's cross-motion to amend the complaint as futile, in accordance with the above discussion. Although Plaintiff has not formally requested leave to amend her complaint a third time, she filed a letter request seeking an "extension" to amend her complaint in response to Defendants' motion to dismiss. (Dkt. No. 31). Defendants oppose this request. (Dkt. No. 32). In recognition of Plaintiff's status as a pro se litigant and because it may be that Plaintiff could assert cognizable claims with better pleading, Plaintiff is granted leave to seek leave to amend. If Plaintiff seeks to file a Third Amended Complaint, Plaintiff must first file a letter brief, along with a proposed amended complaint, within twenty-one days of this Order. The letter brief must detail how the proposed pleading cures the deficiencies the Court has identified. Any Third Amended Complaint must be a complete pleading which will replace the current complaint in total.

## VI.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion to amend (Dkt. No. 25) is **DENIED** as futile; and is further

**ORDERED** that, if Plaintiff seeks to file a Third Amended Complaint, Plaintiff must first file a letter brief, along with a proposed amended complaint, within **TWENTY-ONE (21) DAYS** of this Order. The letter brief must detail how the proposed pleading cures the deficiencies the Court has identified. Defendants may file a response within fourteen days; and it is further

**ORDERED** that if Plaintiff does not file a letter brief proposing amendment within twenty-one days of the date of this Order, the Clerk is directed to dismiss the Amended Complaint and close this case without further order; and it is further

**ORDERED** that the Clerk of the Court is directed to serve this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>August 8, 2022</u>
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

17